NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0661n.06

No. 12-1737

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 17, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROLANDO HUNTLEY, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
|     Defendant-Appellant. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |

Before:  SILER, CLAY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Defendant-appellant Rolando Huntley appeals his conviction and sentence following a guilty plea.  Huntley argues that the district court erred by denying his motion to suppress evidence seized during a *Terry* stop and by imposing a two-level enhancement for obstruction of justice under United States Sentencing Guidelines Manual § 3C1.1.  Because Huntley did not preserve his right to appeal the district court's ruling on his motion to suppress and the district court properly applied the obstruction of justice enhancement, we affirm Huntley's conviction and sentence.

I.

A grand jury charged Huntley with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of obstruction of justice, in violation of 18 U.S.C. § 1503.  These charges arise out of an encounter between Huntley and officers of the Detroit Police Department.  Officer Lestine Jackson testified that on May 28, 2010, she received notice of an

assault occurring at a gas station. At the time, Jackson was working with Officers Nathan Cover and Kevin Chubb. When Jackson arrived at the gas station, she saw one woman and four men, including Huntley, standing outside. As the officers approached the group, Huntley walked away. Jackson spoke with the woman while Chubb walked over to Huntley. Chubb brought Huntley to Jackson and then retrieved a gun wrapped in cloth that he saw Huntley leave near a pay phone as he walked away from the group. Jackson testified that she asked Huntley to step to the rear of the patrol car because she thought he may have been involved in the assault, based on the description given by the dispatcher. Jackson asked Huntley his name, and Huntley replied that his last name was Armstrong. Upon seeing Chubb with the gun, Huntley ran away from the officers and was eventually caught by Chubb. Officers learned Huntley's true identity when they processed his fingerprints.

On June 6, 2010, a grand jury charged Huntley with one count of being a felon in possession of a firearm. Huntley consented to detention pending trial. While in jail, Huntley spoke over the phone with a man and a woman, neither of whom have been identified. The following are excerpts of those conversations:

Conversation 1:

| | |
|---|---|
| Huntley: | Nephew can still take this . . . and get out on probation, and get out the same day dog. And get this shit off his record right then. |
| Female: | I know, I told nephew that, but how would he be able to do that? |
| Huntley: | He would come to court. |
| Female: | And say he did it? |
| Huntley: | Yep. And he will get out that same day. |
| Female: | Alright, I'm gonna talk to nephew and I'm gonna tell him to go on ahead and do that for you so you can get out. |
| Huntley: | You know how much time they are trying to give me, dog? |
| Female: | Yea. |

*United States v. Huntley*, No. 12-1737

Conversation 2:

| | |
|---|---|
| Huntley: | Did you find anything about that shit I was telling you about? |
| Female: | Yeah. |
| Huntley: | I know he probably like hell no. |
| Female: | He say he don't know. He gotta think about it. (Unintelligible). I say ain't no reason need to think about it, cuz he's scared about his other shit in Belleville. |

Conversation 3:

| | |
|---|---|
| Male: | I want to help you dog, but the way this shit is going it is making me uncomfortable. |
| Huntley: | They trying to give me an L dog cause I got a f*cked up record. |
| Male: | I told you I'm going to do what I do, but if they f*ck me up dog, I'm going to say thanks to you do. |
| Huntley: | You'll never even worry about none of this shit, dog, never even worry about none of this shit. |

Based on these conversations, a grand jury issued a superseding indictment, adding a charge of obstruction of justice.

Several months later, Huntley filed a motion to suppress evidence seized during the *Terry* stop, arguing that the stop violated the Fourth Amendment. The district court held an evidentiary hearing and denied Huntley's motion to suppress.

Huntley and the government reached a plea agreement pursuant to Federal Rule of Criminal Procedure 11, but that agreement was not reduced to writing. Huntley pled guilty to the felon in possession count, and the court dismissed the obstruction of justice count on the government's motion. The U.S. Probation Office prepared a presentence investigation report and recommended that the court apply a two-level increase in the offense level for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.

*United States v. Huntley*, No. 12-1737

At the sentencing hearing, the district court overruled Huntley's objection to the two-level increase for obstruction of justice, reasoning that

> the defendant's conduct, fairly observed, clearly was intended to obstruct both the investigation and the prosecution of this offense, because the defendant was very clearly trying to get somebody else to take responsibility for—to take the fall for a crime that he had committed by attempting to use persuasion and effectively attempting to suborn perjury or not attempting to suborn perjury, attempting to influence somebody else to perjure themselves to take responsibility for this crime.

The court sentenced Huntley to 108 months' imprisonment.

II.

Huntley did not preserve his right to appeal the district court's denial of his motion to suppress. Federal Rule of Criminal Procedure 11(a)(2) provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." A defendant may appeal a pretrial motion under Rule 11(a)(2) only if the defendant obtains "'1) a conditional guilty plea in writing; 2) that reserves the right to appeal a specified pre-trial motion; and 3) that evidences the government's consent.'" *United States v. Mendez-Santana*, 645 F.3d 822, 828 (6th Cir. 2011) (quoting *United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003)). Without a conditional guilty plea, this court is limited to "consideration of jurisdictional issues and the voluntariness of the guilty plea itself." *Mendez-Santana*, 645 F.3d at 828. The oral plea agreement that Huntley entered into with the government does not satisfy the requirements of Rule 11(a)(2). As a result, Huntley did not preserve his right to appeal the district court's ruling on his motion to suppress. We therefore do not reach the merits of Huntley's argument on appeal.

III.

Next, Huntley argues that the district court erred in imposing a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The district court's factual findings are reviewed for clear error and its conclusion as to whether the facts constitute obstruction of justice is reviewed *de novo*. *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012); *United States v. Gilpatrick*, 548 F.3d 479, 484 (6th Cir. 2008). The government bears the burden of proving obstruction of justice by a preponderance of the evidence. *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002). Section 3C1.1 provides that the district court should increase the offense level by two levels if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S. Sentencing Guidelines Manual § 3C1.1 (2011). The application notes provide a non-exhaustive list of examples of conduct to which the adjustment applies. *Id.* at cmt. n.4. The conduct includes: "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so, [and] committing, suborning, or attempting to suborn perjury." *Id.*

Huntley argues that the district court should not have applied the obstruction of justice enhancement because he did not take a substantial step toward obstructing justice and therefore his actions did not rise to an attempt to obstruct justice. Huntley contends that this case is analogous to *United States v. Horn*, 113 F. App'x 355 (10th Cir. 2004), where the Tenth Circuit held that the district court's enhancement for obstruction of justice was clearly erroneous. In that case, Horn had

written a letter to one of his girlfriends, Sandra Goad, in which he explained that his only way to avoid a conviction would be if his other girlfriend would say that she sold the guns. *Id.* at 356. The Tenth Circuit held that Horn's actions did not rise to the level of attempting to influence the testimony of a witness because he did not take a substantial step toward convincing a witness to commit perjury. *Id.* at 357. Rather, Horn's letter

> amounted to little more than a hopeful wish for exoneration and a statement of his future intent to convince [his other girlfriend] to commit perjury. Any plans to suborn perjury or otherwise obstruct justice were only in their planning stages and clearly were not embarked upon with the language of the letter.

*Id.* Likewise, Huntley claims that the "remarks over the telephone . . . were, at most, no more than a 'hopeful wish for exoneration' without any particular plan, specificity, or even an identified witness to carry it forth."

Huntley distinguishes the facts here from those in *United States v. Bingham*, 81 F.3d 617, 632 (6th Cir. 1996), where this court held that the district court properly applied the obstruction of justice enhancement. Bingham had written several letters to his girlfriend and co-defendant, Linda Petaway, attempting to persuade her not to enter a guilty plea. *Bingham*, 81 F.3d at 632. Petaway pled guilty and testified that Bingham told her that "if she did not testify that a particular gun was hers, he would get into a lot of trouble and he did not want to go back to prison." *Id.* By contrast, Huntley argues that here there was no identified witness or anticipated testimony. Huntley claims that "there was nothing beyond mere recorded conversations referencing the unknown individual, 'Nephew.'"

Huntley's arguments are unpersuasive because he did, in fact, take a substantial step toward obstructing justice. In *Horn*, the defendant merely expressed a desire to convince one of his

girlfriends to commit perjury, but here Huntley acted on his desire and asked a woman over the phone to have "Nephew" "say he did it." A follow-up conversation with this woman shows that she spoke with the man and he said he would think about it. Huntley also spoke directly with a man and attempted to persuade him to take responsibility for possession of the firearm. Huntley's actions went far beyond a mere desire to convince someone to commit perjury. By making these three phone calls, Huntley, like Bingham, took a substantial step toward his goal of having someone else claim responsibility for possession of the firearm.

Huntley points out that the government did not identify the individuals he spoke with on the phone and designate them as witnesses in his trial. Huntley's observation does not undermine the applicability of the enhancement. The enhancement applies so long as the defendant "attempted to obstruct or impede[] the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S. Sentencing Guidelines Manual § 3C1.1 (2011). Although one example of covered conduct, in a non-exhaustive list, is "unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," *id.* at cmt. n. 4(A), there is no requirement that the person who Huntley sought to influence be identified by the government as a witness. In this case, the government's investigation was cut short by Huntley's guilty plea. This does not negate the fact that prior to his guilty plea, he attempted to obstruct the administration of justice by asking someone else to claim responsibility for possession of the firearm. Accordingly, we hold that the district court properly applied the obstruction of justice enhancement under U.S.S.G. § 3C1.1.

## IV.

For the reasons provided above, we affirm Huntley's conviction and sentence.