**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0416n.06

**No. 12-3203**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | *Apr 26, 2013* |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | On Appeal from the United States |
|  | ) | District Court for the Southern |
| SHERON S. PHIPPS, | ) | District of Ohio |
|  | ) |  |
| Defendant-Appellant. | ) |  |

Before:       BOGGS and McKEAGUE, Circuit Judges; and CARR, District Judge.[*]

BOGGS, Circuit Judge.  On June 2, 2011, Defendant-Appellant Sheron S. Phipps pled guilty to a one-count indictment charging him with possessing cocaine on or about March 10, 2010, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  On January 12, 2012, the district court held a sentencing hearing to determine the drug quantity that should be attributed to Phipps and two weeks later issued an Opinion and Order attributing three kilograms of cocaine to Phipps.  Based on this finding, the district court conducted a final sentencing hearing on February 3, 2012, during which it sentenced Phipps to 100 months of imprisonment and three years of supervised release.

---

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Phipps now appeals his sentence, arguing that the district court committed clear error at sentencing in attributing three kilograms of cocaine to him. For the reasons outlined below, we affirm the decision of the district court.

**I**

Phipps's plea arose from events occurring in March 2010, when police surveillance revealed that he was in possession of controlled substances. On March 9, 2010, Jeff Edwards, a deputy sheriff in Franklin County, Ohio, observed Phipps leave his residence carrying two trash bags, drive to a dumpster, and deposit the trash bags therein. Edwards searched these bags and found three kilogram-sized wrappers with white-power residue, a gallon-sized plastic bag with similar residue, a can of acetone, and a container of inositol. Two of the kilogram-sized wrappers retained the actual shape of a brick. Testing of the residue on two of the plastic wrappers confirmed that it was cocaine, though the residue on the third wrapper and the gallon-sized bag was not tested.[1]

The following day, Franklin County Detective and DEA Task Force Officer Ann Durbin, along with other law enforcement officials, executed a search warrant at Phipps's home, locating a cocaine press and a loaded firearm in the living room and acetone, inositol, a digital scale, a bag of 13.6 grams of cocaine, and a bottle of Oxycodone in the kitchen. Another firearm and over $12,000 in cash were found in the bedroom. Lakia Jackson, an individual present at Phipps's residence during the search, gave Durbin a written statement that the cocaine, firearms, and cash belonged to

---

[1] Edwards did not state which two of the kilogram-sized wrappers were tested, i.e., whether the two wrappers that retained the shape of a brick were tested or whether the third, shapeless wrapper was one of the two that was tested.

Phipps. That same day, Edwards arrested Phipps during a traffic stop and discovered over $14,000 in cash in Phipps's car. During the stop, Phipps admitted that the money in the car, as well as the bag of cocaine found at his home, belonged to him.

A month later, on April 21, 2010, Durbin and other police executed a search of Phipps's uncle's home, where it was suspected that Phipps and his cousin had been distributing drugs. In this residence, police discovered a backpack marked with Phipps's name containing one kilogram of cocaine, 65 grams of cocaine base, over $9,000 in cash, and a firearm. Phipps's cousin, who was present at the house, told Durbin that the book bag had been delivered by Phipps and that Phipps had been providing him kilogram quantities of cocaine every few weeks for three to five years.

Phipps pled guilty on June 2, 2011, to one count of possessing cocaine on or about March 10, 2010, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (841)(b)(1)(C). Soon after, a probation officer prepared a pre-sentence report (PSR), which recommended that seven kilograms of cocaine be attributed to Phipps for sentencing purposes. The PSR reached this quantity by attributing to Phipps three kilograms of cocaine from the three plastic kilogram-sized wrappers found in the garbage (one kilogram for each wrapper), three kilograms of cocaine based on sales to Phipps's cousin, and one kilogram for the brick of cocaine found in Phipps's uncle's home. The PSR also attributed to Phipps the 13.6 grams of bagged cocaine found in Phipps's home, the 65 grams of cocaine base found in Phipps's uncle's home, and the Oxycodone, but appears to have disregarded these smaller amounts in reaching its final seven-kilogram determination.

At Phipps's January 2012 sentencing hearing, the government presented the testimony of Edwards and Durbin describing the aforementioned events. Phipps's cousin did not testify, but

Durbin did relay the contents of her interview with him to the district judge. After considering this testimony and the parties' post-hearing briefs, the district judge issued an Opinion and Order on January 26, 2012, in which he attributed three kilograms of cocaine to Phipps based solely on the three one-kilogram cocaine wrappers that Phipps had placed in the trash. The district judge thus assigned Phipps a base offense level of 28.[2]

At Phipps's final sentencing hearing, the district judge used this base offense level, along with adjustments for possession of a dangerous weapon, acceptance of responsibility, and timely notification, to reach a final offense level of 27. Coupled with Phipps's category IV criminal history, Phipps's advisory guidelines range was 100–125 months. Considering the totality of the circumstances, the district judge did not believe there were circumstances warranting a variance from the guidelines and sentenced Phipps to 100 months of imprisonment—the low end of the guidelines range—and three years of supervised release.

On appeal, Phipps has challenged only the district judge's use of a base offense level of 28, arguing against the judge's determination that he was responsible for three kilograms of cocaine.

**II**

**A**

We review a district court's sentencing decisions for abuse of discretion. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Under this standard, "[a] district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should be

---

[2] The quantity of cocaine required to qualify for a base offense level of 28 is "at least 2 KG but less than 3.5 KG of Cocaine." U.S.S.G. § 2D1.1(c)(6).

upheld unless clearly erroneous." *United States v. Young*, 553 F.3d 1035, 1051 (6th Cir. 2009) (internal quotation marks omitted). This circuit has emphasized the Supreme Court's guidance that "[a] finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Thus, if a district court's quantity determination is based on a "plausible" view of the evidence presented, this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson*, 470 U.S. at 574.

In addition, we note that the district court's finding as to drug quantity need only be supported by a preponderance of the evidence. *United States v. Young*, 553 F.3d 1035, 1051 (6th Cir. 2009). In other words, the district court need only have concluded that it was more likely than not that a certain quantity of drugs was attributable to a defendant. It thus follows that when employing the "clear error" standard to review the district court's decision, this court will ask only whether it was clearly erroneous for the district court to find that it was more likely than not that three kilograms of cocaine was attributable to Phipps.

**B**

The district court's finding that three kilograms of cocaine was attributable, by a preponderance of the evidence, to Phipps was not clearly erroneous. The district court's Opinion and Order provided a detailed account of the evidence presented at the January 12, 2012, sentencing hearing. The district court based its quantity finding on the testimony of two law enforcement

officers, Edwards and Durbin, both of whom had first-hand knowledge of the investigation into Phipps's drug activity, and on physical evidence they recovered. Based on Edwards's testimony that he had recovered three drug wrappers—two of which tested positive for cocaine—from a garbage bag Phipps had placed in a dumpster and that these wrappers were "kilogram-sized," the court determined that it was more likely than not that each wrapper contained one kilogram of cocaine. The court made this determination based not only on the wrappers themselves, but also based on the unemployed Phipps's possession of over $26,000 in cash, two loaded firearms, and cocaine-processing tools, i.e., cutting agents, a press, and a scale.

In addition, the district court, attempting to err on the side of caution, disregarded the gallon-sized plastic bag found along with the kilogram-sized wrappers, noting that the bag could have been used to process cocaine taken from the wrappers. The district court also cautiously chose to ignore the hearsay statements from Durbin's interview with Phipps's cousin, finding that they were not "sufficiently reliable," and thus excluded three kilograms of cocaine that the PSR recommended including. And the district court did not rely on the one kilogram of cocaine found in the backpack bearing Phipps's name, the 65 grams of cocaine base found at Phipps's uncle's home, or the Oxycodone found at Phipps's home. In sum, the district court limited itself to considering only the amount of cocaine that could be traced to the three kilogram-sized wrappers when it potentially could have considered far more.

In response, Phipps raises three arguments: (1) that Edwards was "unable to determine" exactly how much cocaine was in each of the wrappers; (2) that the three wrappers could have been "used to triple-wrap a single brick"; (3) that "the two wrappers that tested positive for cocaine [could

have been] used to double wrap a single brick," with the third "containing no cocaine at all." Appellant Br. at 19–21.

Phipps's first argument runs counter to the long-standing evidentiary standard employed by this circuit during sentencing hearings. Phipps insists that because Edwards could not say for certain precisely how much cocaine each of the three wrappers contained, the district court was wrong to attempt to tie an exact quantity to each wrapper. Yet, as stated above, certainty is not the evidentiary standard by which a court must be convinced. This circuit had made clear that the district court must only find that a given quantity is "more likely than not" attributable to the defendant. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). This standard is a far cry from absolute certainty and does not require that the court have indisputable data supporting a precise amount. To the contrary, "an estimate will suffice [so long as] a preponderance of the evidence [supports] the estimate." *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990); *see also United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000) (noting that in the context of drug-quantity determinations, "[a]pproximations are completely appropriate").

Thus, the only real question before this court is whether the district court had enough evidence to support the conclusion that each wrapper "more likely than not" contained one kilogram of cocaine. Based on Edwards's and Durbin's testimony that these were kilogram-sized wrappers, that each wrapper was coated in a white residue, that two of the wrappers tested positive for cocaine, and that Phipps possessed cocaine-production paraphernalia, large amounts of cash, and loaded weapons, the district court answered this question in the affirmative. We do not find this answer to be clearly erroneous, and in similar situations, many of our sister circuits agree. *See, e.g., United*

*States v. German*, 486 F.3d 849, 855 (5th Cir. 2007); *United States v. Dorsey*, 51 F. App'x 374, 377 (4th Cir. 2002); *United States v. Luciano*, Nos. 97-1221, 97-1466, 1998 WL 735883, at *2 (2d Cir. Oct. 15, 1998); *United States v. Agiz-Meza*, 99 F.3d 1052, 1055 (11th Cir. 1996); *United States v. Crockett*, 82 F.3d 722, 726 (7th Cir. 1996); *United States v. Eberspacher*, 936 F.2d 387, 389 (8th Cir. 1991).

Phipps's second and third arguments insist that the government did not satisfy the preponderance of the evidence standard. While, unlike his first argument, these claims at least acknowledge the appropriate evidentiary standard, they still ultimately are misplaced. First, Phipps argues that because the three wrappers could all have been used to wrap a single brick of cocaine, it is not more likely than not that each wrapper contained its own kilogram-sized brick. However, each wrapper was covered with a white residue which, on two of the wrappers, tested positively as cocaine. Since, if double or triple wrapping had been employed, one would expect the outer wrappers not to be coated in cocaine, the district court was justified in finding that it was more likely than not that each wrapper was used on its own brick.

In addition, Edwards testified that when double wrapping does occur, it usually is to prevent masking agents from coming into contact with the cocaine. More specifically, the cocaine is wrapped once, then a masking agent, such as a dryer sheet, is placed around the cocaine, and then another, outer wrapper is placed around the brick. The first wrapper essentially acts as a barrier to protect the cocaine itself from absorbing chemicals from the masking agent. In this case, however, Edwards specifically stated that he found no masking agents in the trash with the wrappers.

Accordingly, the district court had even more reason to believe that the wrappers were not being used to double-wrap cocaine, but rather that each was wrapped around a separate brick.[3]

Phipps's final argument is that only two of the three wrappers were tested for cocaine, invalidating a quantity determination of three kilograms that would require relying on all three wrappers. In addition, Phipps posits that the two wrappers that did test positive could have been used to double wrap a single brick, reducing the total quantity attributable to him to one kilogram. The latter argument—that double wrapping could have occurred—is simply a variation on Phipps's double- and triple-wrapping argument, which we have already rejected. As explained earlier, the possibility that double wrapping occurred does not make a district court's finding to the contrary clearly erroneous, especially given that the wrappers were each covered with white residue and that no masking agents were found in the garbage with them.

With regard to Phipps's observation that only two of the wrappers were tested for cocaine, the fact that they tested positive for cocaine is the very reason that the district court was not clearly erroneous in concluding that the residue on the third wrapper was more likely than not also cocaine. True, testing the third wrapper would have been more persuasive and perhaps necessary under a more stringent evidentiary standard, but when the district court need only be convinced by a preponderance of the evidence, the test results from the first two wrappers, coupled with the circumstances surrounding the wrappers' discovery, convince us that the district court was not

---

[3] Phipps also asserts that a double- or triple-wrap theory would explain why two of the wrappers retained a brick-like shape while the third was crumpled. It is unclear to this court why triple wrapping a brick would cause one wrapper to be crumpled while allowing the others to retain their shape, and Phipps provides no further elucidation.

clearly erroneous in finding that the third, untested wrapper was also coated in cocaine residue and contained a full one-kilogram block of cocaine.[4]

### III

Finally, Phipps asserts a due-process claim, arguing that "[t]he Due Process Clause of the Fifth Amendment also imposes a minimum standard of reliability for evidence admitted at sentencing." Appellee Br. at 28 (quoting *United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007)). More specifically, Phipps asserts two separate arguments under the heading of due process: (1) that the government's failure to test the third cocaine wrapper dooms the wrapper's evidentiary reliability and thus that the district court should not have relied on it in making its quantity determination; and (2) that the district court made an "unreliable evidentiary leap" in determining that all three wrappers each contained a full brick of cocaine. Appellee Br. at 29.

In *United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992) (en banc), we did indeed reemphasize the rule that the proof considered on sentencing "must be found to have sufficient indicia of reliability to support its probable accuracy as a matter of due process protection." (internal quotation marks omitted). But the same decision also made clear that the Sentencing Guidelines allow a district court to base a sentence on "*any information* . . . , so long as it has sufficient indicia of reliability to support its probable accuracy" and that this rule incorporated and complied with the requirements of due process. *Id*. at 1513 (emphasis added) (internal quotation marks omitted).

---

[4] And, since the quantity of cocaine required to qualify for a base offense level of 28 is "at least 2 KG but less than 3.5 KG of Cocaine," U.S.S.G. § 2D1.1(c)(6), Phipps's base offense level would remain 28 even were we to find that the district court should have ignored the third, untested wrapper and attributed to him only two kilograms of cocaine.

Here, Phipps first argues that the third, untested cocaine wrapper was unreliable evidence. But his argument is founded on the idea that the wrapper could not conclusively be said to contain cocaine residue—a claim that does not implicate the reliability of the evidence itself, but merely the reliability of conclusions that can be drawn from the evidence. Phipps does not allege, for instance, that the wrapper was tampered with or planted by the police. Nor does Phipps point to any other unreliable evidence considered by the district court—how could he, as the district court cautiously excluded Phipps's cousin's hearsay testimony as well as several pieces of physical evidence that it found unreliable. Rather, Phipps attacks only the district court's conclusion that the wrapper was coated in cocaine powder. This has nothing to do with the reliability of the evidence under the Due Process Clause, but rather with whether the district court satisfied the preponderance of the evidence standard set out under the Sentencing Guidelines, a question we have already answered in the affirmative. The district court did not consider any unreliable evidence, and Phipps's first due-process argument fails.

Phipps also asserts that the district court's determination that each empty kilogram-sized wrapper contained a full brick of cocaine was an unreliable evidentiary leap that violates due process. But, as stated in Part II.B, the Guidelines permit a district court to estimate drug quantities if it is more likely than not that a given quantity of drugs was attributable to a defendant. In other words, the district court is allowed to make an "evidentiary leap" so long as it is supported by a preponderance of the evidence. In such a situation, the only due-process issue that could arise would be the district court's basing its preponderance of the evidence position on evidence that lacked sufficient indicia of reliability, an argument we disposed of in the preceding paragraph. Thus,

because the district court found that three kilograms of cocaine was more likely than not attributable to Phipps, and because it based that decision on reliable evidence, Phipps's second due-process argument is also without merit.

**IV**

Accordingly, we hold that the district court did not commit clear error in attributing three kilograms of cocaine to Phipps and sentencing him to 100 months of imprisonment and three years of supervised release. We thus AFFIRM the judgment of the district court.