NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0205n.06

No. 14-5469

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 12, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| ULISES A. MURILLO-ALMAREZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |

**Before: CLAY, GILMAN, and SUTTON, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** In May 2013, a federal grand jury indicted Ulises A. Murillo-Almarez for the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). He pleaded guilty three months later to the lesser-included offense of conspiracy to distribute heroin. Over the course of the next eight months, the court held two different sentencing hearings for Murillo-Almarez. After hearing evidence from both parties, the court determined that Murillo-Almarez was subject to a two-point increase for maintaining a premises for drug distribution and a two-point increase for being a leader in the conspiracy. The court found that the appropriate base offense level for Murillo-Almarez was 30, but it varied downward to level 28 in anticipation of amendments to the Sentencing Guidelines for drug offenses. It then considered the sentencing factors listed in 18 U.S.C. § 3553(a) and, in the end, sentenced

Murillo-Almarez to 121 months in prison, which was at the high end of the applicable Guidelines range.

Murillo-Almarez now appeals that sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Underlying offense

The district court summarized the relevant facts as follows:

> In October 2012, the Cincinnati Police Department's Major Drug Offenders Unit began investigating a drug trafficking organization ("DTO") responsible for dealing black tar heroin in the Cincinnati/Northern Kentucky area. Utilizing a confidential informant ("CI"), Detective Robin Kelly was ultimately introduced to the DTO in an undercover capacity. She was present for five controlled purchases between the CI and members of the DTO, occurring on January 14, 2013, January 24, 2013, February 8, 2013, February 14, 2013 and March 26, 2013.
>
> Through the controlled purchases, officers were able to learn a significant amount about the DTO's operations. The CI always placed orders by phone with an individual known as "Ivan," who was later identified by the CI as Defendant Murillo. The CI ordered quantities of heroin in terms of "balloons," either "big" or "small" denoting gram or half-gram weights, respectively. Murillo would have one of his couriers—either Defendants Plazola Aramburo, Meza-Paez or Souto-Valdez (who remains at-large)—deliver the balloons to the CI's residence in Cincinnati, Ohio. The CI typically paid $120.00 per gram of heroin.
>
> On March 5, 2013, Defendant Souto-Valdez was stopped by the Cincinnati Police Department for a traffic violation. Officers seized approximately nine grams of heroin from Souto-Valdez's vehicle. He was then arrested and brought to a local precinct for an interview with Officer Rivera. During the interview, Souto-Valdez agreed to work with officers and provide information about the DTO. He explained that he lived with Defendants Meza-Paez and Plazola Aramburo at an apartment on Turfway Road in Florence, Kentucky, just across the Ohio River from Cincinnati. He also admitted that Defendant Murillo provided each of the co-defendants with heroin to sell. Specifically, Murillo typically supplied him with sixteen (16) to eighteen (18) balloons of heroin three (3) times a week. At the conclusion of the interview, Souto-Valdez was released in order to provide additional assistance. He absconded two days later.

On March 27, 2013, officers executed a search warrant at the Turfway Road apartment. Defendants Plazola Aramburo and Meza-Paez were found inside and placed under arrest. Officers also seized approximately 40 grams of heroin and $13,853.00 in U.S. currency. At some point thereafter, Agent Kappes received a call from the apartment's management that they found an additional quantity of heroin in the apartment when they were cleaning it. With that additional quantity, a total of 55 grams of heroin was ultimately found in the apartment.

Once the search was completed, Defendants Plazola Aramburo and Meza-Paez were transported to the Boone County Sheriff's Department for additional questioning. Both defendants admitted that Defendant Murillo supplied them with between 16 to 18 balloons containing heroin three times per week for the five weeks they were each a part of the conspiracy. Defendant Plazola Aramburo also confessed that Defendant Murillo gave him $10,000.00 on three separate occasions for him to send to ten fictitious names in Mexico. Plazola Aramburo admitted that the money was the proceeds of heroin sales. Additionally, Plazola Aramburo told officers that Defendant Murillo was currently residing in Lexington, Kentucky.

Acting on Plazola Aramburo's tip, officers were able to locate Murillo at a Value Place Motel in Lexington. On October 27, 2013, officers executed a search warrant at Murillo's motel room and on his Chrysler Pacifica vehicle. Their search uncovered the following: several fraudulent identification cards, a suspected drug ledger, approximately $35,713.00 in U.S. currency, and several cell phones.

## B. District court proceedings

A federal grand jury returned a one-count indictment against Murillo-Almarez and his coconspirators in May 2013. In August of that year, Murillo-Almarez pleaded guilty to conspiracy to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 846. The prosecution agreed to make certain sentencing recommendations in exchange for the guilty plea, but the plea agreement did not specify a recommended length of the sentence. An evidentiary hearing was held in January 2014, during which the district court heard arguments of counsel regarding the appropriate base offense level and any deviations from that level. It also heard testimony from three law-enforcement officers. After taking the arguments and the evidence

under advisement, the court issued an order on April 7, 2014 that set Murillo-Almarez's base offense level at 30.

On April 15, 2014, the court held a final sentencing hearing at which it considered the factors set forth in 18 U.S.C. § 3553(a). The court granted Murillo-Almarez a two-level variance based on the anticipated amendments to the guidelines for drug offenses, moving his adjusted offense level to 28. Combined with a criminal history category of II, Murillo-Almarez was sentenced to 121 months in prison, a sentence at the top end of the applicable Guidelines range. He now timely appeals that sentence.

## II. ANALYSIS

### A. Standard of review

We review challenges to the reasonableness of a sentence under the abuse-of-discretion standard. *United States v. Brooks*, 628 F.3d 791, 795 (6th Cir. 2011). Sentences must be both procedurally and substantively reasonable. *United States v. Castilla-Lugo*, 699 F.3d 454, 458–59 (6th Cir. 2012). We first evaluate whether the district court committed "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007).

The district court must provide a statement of reasons sufficient "to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Although the district court need not explicitly discuss each § 3553(a) factor, the record must demonstrate

-4-

that the district court at least considered each factor when determining the appropriate sentence. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010).

If the sentence is procedurally sound, we next evaluate whether the sentence is substantively reasonable. "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). A sentence is substantively unreasonable if the district court "fail[ed] to consider relevant sentencing factors" or gave an "unreasonable amount of weight to any pertinent factor." *United States v. Camacho-Arellano*, 614 F.3d 244, 247 (6th Cir. 2010) (internal quotation marks omitted). Sentences that fall within the appropriately calculated Guidelines range enjoy a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

## B. Issues raised

Murillo-Almarez raises three arguments as to why his sentence is unreasonable: (1) the district court was not appropriately conservative in determining the quantity of drugs involved in the offense and thus improperly calculated the applicable Guidelines range, (2) there was insufficient proof to support a sentencing enhancement for maintaining a premises for the manufacture or distribution of drugs, and (3) the district court failed to consider all of the factors required by 18 U.S.C. § 3553(a). We find none of these arguments persuasive.

### 1. *The district court did not err in calculating the quantity of drugs involved*

Murillo-Almarez first argues that the district court erred in calculating the applicable Guidelines range based on the quantity of drugs involved in his offense. Because the precise amount of heroin involved in the conspiracy was not readily apparent at the scene, the court

calculated the amount involved by dividing the total amount of money recovered in connection with the conspiracy by the typical street price per gram of heroin, which the court found to be $120. Using this calculation, and taking into account the actual heroin found during the searches, the court determined that there were approximately 719 grams of heroin involved. Murrillo-Almarez argues, however, that the court should have used a street price of $130 per gram in its calculation, which would have reduced the total to 675 grams of heroin. This difference is significant, he claims, because the base offense level for 675 grams of heroin is 28, whereas the base offense level for 719 grams is 30.

We review a district court's drug-quantity determination under the clear-error standard. *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). "[W]hen the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence. . . ." *United States v. Keszthelyi*, 308 F.3d 557, 576 (6th Cir. 2002) (internal quotation marks omitted). But when that estimate is based upon circumstantial evidence, "a court must err on the side of caution" so as to avoid holding defendants "responsible for drug quantities in excess of the amounts for which they more likely than not are responsible." *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990).

The district court's estimation in this case was supported by competent evidence and was appropriately conservative. Murillo-Almarez complains that the district court used the street value of $120 per gram of heroin in making its calculation, as testified to by a witness, when the same witness testified earlier that, according to her best recollection, $130 per gram was the going rate at the time. By using the lower of the two prices presented, Murillo-Almarez argues that the district court did not "err on the side of caution" and thus improperly calculated the applicable Guidelines range.

The witness's recollections, however, were not the only evidence before the district court regarding the value of the heroin at issue. Agents and confidential informants had made four controlled purchases, which provided the court with the precise amount paid for the amount of heroin received. The average price per gram based on those purchases was $85. Had the court used this arguably more reliable price per gram, it would have found Murillo-Almarez responsible for significantly more than 719 grams of heroin. We therefore conclude that the district court exercised an appropriate degree of caution in calculating the approximate quantity of drugs involved in Murillo-Almarez's offense and did not commit clear error in its calculation.

## 2. *The district court did not err in applying the sentencing enhancement for maintaining a premises for the distribution of drugs*

Murillo-Almarez next argues that the district court erred in applying a two-point enhancement for maintaining a premises for the manufacture or distribution of drugs. The government bears the burden of establishing by a preponderance of the evidence that a sentencing enhancement applies. *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012). "Our circuit has not settled on the proper standard of review for assessing [maintaining-a-premises] enhancements. *Compare United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002) (reviewing for clear error), *with United States v. Sweet*, 630 F.3d 477, 480 (6th Cir. 2011) (reviewing de novo)." *United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014). In this case, however, as in *Bell*, "the standard makes no difference [because Murillo-Almarez] loses either way." *Id.*

A defendant who has been convicted of a federal drug crime and who "maintained a premises for the purpose of manufacturing or distributing a controlled substance" is subject to an enhanced sentence. U.S.S.G. § 2D1.1(b)(12). This enhancement applies to anyone who

"(1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). The distribution of drugs need not be the sole purpose of the premises in order for the enhancement to apply. *Id.* "At bottom, the question is whether [the premises] played a significant part in distributing drugs." *Bell*, 766 F.3d at 637 (internal quotation marks omitted).

In this case, there was ample evidence for the district court to conclude by a preponderance of the evidence both that the apartment in question played a significant part in distributing drugs and that Murillo-Almarez was responsible for maintaining the apartment. A great deal of cash and heroin was recovered from the apartment when it was searched. Evidence was presented that Murillo-Almarez paid rent for the apartment, that he had keys to the apartment, and that he was at the apartment multiple times per week. There was also testimony that Murillo-Almarez brought large quantities of heroin to the apartment to be distributed by his coconspirators, who were residing there.

The fact that Murillo-Almarez did not formally lease the apartment is of no consequence because "[d]rug kingpins are not known for signing leases for their drug houses." *United States v. Cannon*, 552 F. App'x 512, 516 (6th Cir. 2014). Similarly, the fact that the apartment was also used as a residence by Murillo-Almarez's coconspirators is irrelevant because the distribution of drugs need not be the only purpose of a premises in order for this enhancement to apply. *See Johnson*, 737 F.3d at 447. The district court thus did not err in applying the enhancement.

### 3. *The district court sufficiently considered the sentencing factors set forth in 18 U.S.C. § 3553(a)*

Finally, Murillo-Almarez argues that his sentence was substantively unreasonable because the district court did not adequately consider the potential sentencing disparity between himself, an alien, and other similarly situated defendants who are citizens of the United States. As an alien, Murillo-Almarez is ineligible for a number of drug-rehabilitation programs that could have reduced his actual period of confinement by a year and a half, assuming that he were to successfully complete the programs. Because other defendants convicted of a similar crime who are not aliens would be eligible to participate in these programs, and because the court did not directly address this potential disparity, Murillo-Almarez argues that his sentence is substantively unreasonable. This argument faces an uphill battle, however, because the sentence imposed by the court fell within the applicable Guidelines range and is thus presumed to be substantively reasonable. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Moreover, this court has previously held that the fact that a defendant is ineligible for drug-rehabilitation programs in prison does not provide a basis for claiming that he was improperly sentenced as compared to other defendants convicted of the same crime. *See United States v. Smith*, 474 F.3d 888, 895 (6th Cir. 2007). Eligibility for such programs is "contingent on approval by the [Bureau of Prisons (BOP)]," and "[e]ven if a defendant completes the program, the BOP does not have to reduce [his] sentence." *Id.* (citing 18 U.S.C. § 3621(e)(2)(B)). "In addition, the reduction of the prisoner's sentence is . . . structured as an incentive. To reduce the sentence before the defendant even attempts to enroll, based on the assumption that he would both enroll in and complete the program if allowed, provides no

-9-

incentive to obtain treatment." *Id.* The district court was thus well within its discretion to not reduce Murillo-Almarez's sentence based on this alleged disparity.

Finally, the district court provided ample explanation for the sentence imposed on Murillo-Almarez. *See id.* at 894 ("We do not require a rote recitation of § 3553(a) factors[,] but rather an explanation of why the district court chose the sentence it did."). The court expressed concerns about the longevity of the conspiracy, the quantity of drugs involved, the scope of the conspiracy, the amount of money involved, and the fact that Murillo-Almarez recruited others to distribute the drugs. These factors, combined with Murillo-Almarez's leadership role, gave the court more than sufficient grounds to sentence him to a term of imprisonment at the high end of the applicable Guidelines range. We therefore conclude that the 121-month sentence imposed by the district court was not substantively unreasonable.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.