NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0100n.06

Nos. 23-5711/5735

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 24, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| TAWSIF TAJWAR (23-5711); LUIS LARA-GARCIA (23-5735),<br><br>    Defendants-Appellants,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY<br><br>OPINION |

Before: MURPHY, DAVIS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. The government charged Tawsif Tajwar and Luis Lara-Garcia for their respective roles in a large-scale drug trafficking and money laundering operation. Lara-Garcia pleaded guilty to his charges, while Tajwar went to trial and was convicted by a jury. Lara-Garcia now appeals his sentence, and Tajwar appeals both his sentence and conviction. We affirm.

**BACKGROUND[1]**

In 2020, law enforcement began investigating a money laundering operation out of central Kentucky. An undercover DEA agent, posing as a money launderer, received a contract to help an individual named Demarkus Nemetz with laundering transactions. During a meeting, the agent offered Nemetz a money counter, which Nemetz took and began using later. The DEA had equipped the money counter with GPS capabilities, which allowed law enforcement to uncover a

---

[1] In light of Lara-Garcia's plea agreement and Tajwar's jury verdict, we construe the facts in favor of the government. *See United States v. Tackett*, 113 F.3d 603, 605 n.1 (6th Cir. 1997).

larger drug trafficking and money laundering conspiracy. Two year later, the effort culminated in the indictment of eleven co-conspirators.

The investigation identified Luis Lara-Garcia as the conspiracy's leader. Lara-Garcia's drug-related operations centered around a stash house used for drug storage, and a barbershop used for both storage and distribution. In 2022, DEA agents raided both locations, seizing large amounts of cash from the barbershop and significant quantities of fentanyl and cocaine from the stash house.

Aside from drug trafficking, the organization ran a money laundering scheme to transfer drug proceeds from the United States to Mexico. The scheme often involved the delivery of bulk cash to couriers, hidden in items like gift bags. The couriers would then help launder the drug proceeds, including through various seemingly legitimate trade transactions.

Tawsif Tajwar acted as a courier, collecting bulk cash in the United States and using it to purchase electronics. He then shipped those electronics to his contact in Hong Kong, Cristal Peng. He made these transactions through his front business, iCash4Phones.

In January 2022, law enforcement discovered Tajwar's role while conducting surveillance on Lara-Garcia. They observed Lara-Garcia leave his residence with two gift bags, which typically signified proceeds for money laundering. Law enforcement followed Lara-Garcia as he drove to a parking lot with a co-conspirator, Tyler Ipock. There, they observed Ipock walk over to Tajwar's van and hand Tajwar the gift bags.

Following this exchange, law enforcement trailed Tajwar and conducted a traffic stop. Tajwar denied consent to search, so an officer deployed a drug dog for an open-air sniff. The dog alerted to narcotics odor, leading to a search of Tajwar's vehicle. The search uncovered the two gift bags containing nearly $200,000 in cash and a gun in the backseat of the vehicle.

Officer Jack Gabriel, and then Officer Elisha Morris, each interviewed Tajwar separately at the scene. Tajwar told the officers that he owned an electronics business in Michigan and had driven to Kentucky to collect payment for cellphones he had shipped to Hong Kong. When asked how many phones he had sold or how much money he had received, Tajwar did not provide clear answers. During his conversation with Officer Gabriel, Tajwar said that the person who gave him the money "was shady" and the money seemed "illegal." Interview Tr., R. 248-1, PageID 1306, 1313. When asked about the gun, he said he had brought it with him for protection.

Tajwar also showed Officer Morris his text messages, and Officer Morris videotaped the messages as Tajwar scrolled through them. The messages revealed that Tajwar had offered to pick up cash in various locations across the country in a group chat with Peng. The messages also showed Peng warning Tajwar about police surveillance and instructing him to be "careful."

In August 2022, a federal grand jury indicted Lara-Garcia and Tajwar, alongside others. The government charged Lara-Garcia with conspiracy to distribute fentanyl and cocaine, 21 U.S.C. § 846, possession with intent to distribute fentanyl or cocaine, *id.* § 841(a)(1), possession of a firearm by an alien, 18 U.S.C. § 922(g)(5)(A), conspiracy to commit money laundering, *id.* § 1956(h), and illegal re-entry into the United States, 8 U.S.C. § 1326(a). He pleaded guilty and was sentenced to 372 months' imprisonment. The government charged Tajwar with conspiracy to commit money laundering, 18 U.S.C. § 1956(h), and promotional money laundering, *id.* § 1956(a)(1)(A)(i). Tajwar proceeded to trial with two co-defendants, was convicted of both counts, and received a sentence of 90 months' imprisonment. Tajwar now appeals his sentence and conviction, while Lara-Garcia appeals his sentence.

## ANALYSIS

Tajwar and Lara-Garcia present different challenges on appeal. We address each individual's claims in turn.

## I.    TAJWAR

On appeal, Tajwar challenges his conviction and sentence on a number of grounds. Many of his arguments, however, are contradicted by either the record or established precedent. And none provide a basis for our reversal of the district court's decisions. We therefore affirm Tajwar's conviction and sentence.

### A.    Tajwar's *Brady* Claim

We first consider Tajwar's claim that the government impermissibly withheld exculpatory evidence. During discovery, Tajwar received a muted version of the video recording of his interview with Officer Morris. After trial, the government found an audible version of the same recording and provided it to Tajwar. Tajwar moved for a new trial under *Brady v. Maryland*, but the district court denied his motion. 373 U.S. 83 (1963). He appeals the district court's *Brady* determination, a decision we review de novo. *United States v. Fields*, 763 F.3d 443, 458 (6th Cir. 2014).

The Due Process Clause of the Fourteenth Amendment requires the government to disclose evidence that is both favorable to a criminal defendant and material to guilt or punishment. *Brady*, 373 U.S. at 86–87. To show that the government violated his *Brady* right to evidence, Tajwar must demonstrate that (1) the government withheld the evidence, either intentionally or inadvertently; (2) the evidence favors him, either because it is exculpatory or impeaching; and (3) he suffered prejudice as a result. *Jackson v. City of Cleveland*, 925 F.3d 793, 814 (6th Cir. 2019).

Tajwar maintains that the government violated *Brady* by failing to disclose the audio recording of his interview with Officer Morris. He claims that the audio shows he denied any knowledge of the funds' origins, whereas Officer Morris testified that Tajwar admitted the funds "probably came from drug proceeds." Trial Tr., R. 243, PageID 1135. Tajwar insists that Officer Morris's testimony provided the only real evidence of his knowledge and intent. And because the recording undermines that testimony, Tajwar argues its nondisclosure prejudiced him at trial.

Tajwar's *Brady* claim fails because he cannot establish prejudice. In this context, prejudice means a "reasonable probability" that the disclosure of the evidence would have changed the outcome of the trial. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citation omitted). We assess prejudice by looking at the cumulative weight of the evidence, rather than individual evidentiary items. *Id.* at 436–37. Viewing the evidence from that lens, we cannot say the withheld recording "undermine[s] confidence in the verdict" in Tajwar's case. *Id.* at 435.

Consider the evidence the government presented. During the trial, the jury heard about Tajwar's unusual business model, which involved shipping hundreds of thousands of dollars' worth of electronics to overseas customers in exchange for bulk cash payments in the United States. The jury also heard about the unusual circumstances of the particular transaction: that Tajwar drove from Michigan to Kentucky with a gun, met a stranger at a gas station, and collected nearly $200,000 worth of cash stuffed into gift bags.

The jury also saw the text messages between Tajwar and Peng, which evinced Tajwar's intent and knowledge. For example, Tajwar told Peng he "need[ed] to pickup [cash] asap" and offered to travel to various states to do so. Trial Tr., R. 243, PageID 1146. And Peng warned Tajwar about police surveillance and told him to be "careful." *Id.*

Finally, the jury heard from Officers Morris and Gabriel about their on-the-scene interviews with Tajwar. The officers testified that Tajwar insisted the money was payment for a legitimate sale, but he couldn't answer basic questions like how many phones he had sold, how much money he had received, or who exactly had paid him. The government also presented a recording of Tajwar's interview with Officer Gabriel, during which Tajwar said the man who gave him money "was shady" and the money seemed "illegal." Interview Tr., R. 248-1, PageID 1306, 1313; *see also* Trial Tr., R. 243, PageID 1060.

Faced with all this evidence, Tajwar portrays Officer Morris's testimony as uniquely important to his money laundering conviction. He argues that Officer Morris's testimony provided the only direct evidence that he knew the funds came from drug trafficking. And he emphasizes that the audio would have impeached that testimony. But the government had to prove that Tajwar knew the money came from *some* unlawful activity, not that he knew it came from drug trafficking in particular. *See United States v. Hill*, 167 F.3d 1055, 1065–67 (6th Cir. 1999) (citing 18 U.S.C. § 1956(c)). And the government carried that burden with so much evidence beyond Officer Morris's testimony that we cannot conclude the recording undermines confidence in Tajwar's convictions. *See Strickler v. Greene*, 527 U.S. 263, 294 (1999); *Jones v. Bagley*, 696 F.3d 475, 489 (6th Cir. 2012). We therefore reject Tajwar's *Brady* claim.[2]

---

[2] Tajwar raises one other argument related to trial evidence. He says the district court erred by not allowing him to introduce his tax returns during his cross-examination of a witness. We review the district court's ruling for abuse of discretion. *United States v. Kettles*, 970 F.3d 637, 642 (6th Cir. 2020). We do not think the district court abused its discretion given that the witness had no knowledge of the documents Tajwar sought to introduce.

B.     **Sufficiency of Evidence for Tajwar's Convictions**

Tajwar also claims that the evidence failed to support his convictions. A defendant who claims insufficiency of the evidence faces "a very heavy burden." *United States v. Robinson*, 99 F.4th 344, 354 (6th Cir. 2024) (citation omitted). We will sustain a conviction if, viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found" the defendant guilty "beyond a reasonable doubt." *Id.* at 353 (citation omitted). We do not require the government to disprove every innocent explanation for the defendant's conduct. *Id.* And we uphold a conviction even if it rests entirely on circumstantial evidence. *Id.* at 353–54.

The jury convicted Tajwar of two crimes: conspiracy to commit money laundering, 18 U.S.C. § 1956(h), and promotional money laundering, *id.* § 1956(a)(1)(A)(i). The conspiracy charge required the government to show that Tajwar "agreed with another person to violate the substantive provisions of the money-laundering statute." *United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006); *see also United States v. Powell*, 847 F.3d 760, 781 (6th Cir. 2017). And the promotional money laundering charge required the government to establish that Tajwar "(1) conducted a financial transaction that involved the proceeds of unlawful activity; (2) knew the property involved was proceeds of unlawful activity; and (3) intended to promote that unlawful activity." *United States v. Warshak*, 631 F.3d 266, 317 (6th Cir. 2010) (citation omitted).

Tajwar makes several arguments against his convictions, but none are persuasive. *First*, he maintains that he lacked the requisite knowledge and intent for both of his crimes. But we think the evidence discussed above—specifically, the unusual circumstances of the transaction, Tajwar's communications with Peng, and his own admission to law enforcement—sufficiently satisfies those elements.

*Second*, Tajwar claims his involvement was limited to the January 2022 transaction and insists that fact defeats his conspiracy conviction. But we do not require a conspirator to be "an active participant in every phase of the conspiracy." *United States v. Munar*, 419 F. App'x 600, 604 (6th Cir. 2011). And separate from that, a conviction for conspiracy to commit money laundering does not require any "overt act[s] in furtherance of the conspiracy," let alone multiple acts, as Tajwar proposes. *Whitfield v. United States*, 543 U.S. 209, 211 (2005). So even if Tajwar's involvement was limited, that does not undermine his conspiracy conviction.

*Third*, Tajwar claims his conspiracy conviction cannot stand because he had no familiarity or communication with his co-defendants. But again, our case law rejects his argument. We have held that a defendant's connection to unindicted co-conspirators can sufficiently support a conspiracy charge "when the indictment refers to unknown or unnamed conspirators" and the evidence is sufficient to show that the defendant conspired with one such conspirator. *United States v. Anderson*, 76 F.3d 685, 688–89 (6th Cir. 1996); *see also United States v. Crayton*, 357 F.3d 560, 567 (6th Cir. 2004). Here, the original and superseding indictments specifically mentioned "known and unknown" co-conspirators. Indictment, R. 1, PageID 3–4; Superseding Indictment, R. 53, PageID 170. And the evidence readily demonstrated Tajwar's connection to and communications in furtherance of money laundering activities with at least one such co-conspirator, Peng.

*Finally*, Tajwar contends that the government failed to show that his transaction "involved the proceeds of unlawful activity," as required for his conviction for promotional money laundering. *Warshak*, 631 F.3d at 317 (citation omitted). He argues that the money may have come from "a legitimate business," namely the barbershop owned by some of his indicted co-conspirators. Tajwar Br. at 38. But Tajwar ignores that the barbershop served as a hub for the conspiracy's drug trafficking activity. The currency Tajwar received came from Lara-Garcia, a

person involved in that unlawful activity. And a search dog detected narcotics odor from Tajwar's vehicle after the currency had come into his possession. These facts, none of which Tajwar disputes, provided sufficient evidence to establish that the funds derived from unlawful activity. We therefore reject Tajwar's challenge to the sufficiency of the evidence.

### C.      Tajwar's Challenges to Jury Instructions

Tajwar next raises two challenges, one to the district court's jury instructions, the other to the court's response to a jury question. We review both for abuse of discretion. *United States v. Fitzgerald*, 906 F.3d 437, 449 (6th Cir. 2018). We think neither is persuasive.

*First*, Tajwar challenges the district court's deliberate ignorance instruction. This type of instruction applies when a defendant denies knowledge of the illegal activity, but the evidence supports a reasonable inference that the defendant deliberately avoided the truth. *See United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012). That was the case here. Throughout trial, Tajwar disclaimed knowledge of the illicit nature of the funds, but the evidence suggested that he ignored clear red flags during the leadup to the transaction. For example, when Peng mentioned police surveillance of her associates, Tajwar asked no follow up questions. When Peng requested that Tajwar travel to another state to pick up huge sums from a stranger, he agreed without hesitation. And when the police asked Tajwar who had paid him and how much money he had received, he did not give a straight answer, even as he claimed the money was payment for a legitimate sale. All of this provided a reasonable basis for the jury to infer that Tajwar, if not a knowing participant, at least deliberately turned a blind eye to obvious signs of unlawful activity. The district court did not abuse its discretion in providing a deliberate ignorance instruction.

*Second*, Tajwar challenges the district court's response to a jury question. During deliberations, the jury submitted a question about the trial testimony of a DEA agent. The jury

asked whether the agent testified that the police used a drug dog to search Tajwar's co-defendants at an airport in February 2021. The district court answered the question in the affirmative.

Tajwar claims that the district court's response invaded the jury's province. But for us to reverse on that ground, Tajwar must first show prejudice. *See United States v. Davis*, 970 F.3d 650, 662 (6th Cir. 2020). Here, he shows none. He does not claim that the response was substantively inaccurate. *See United States v. Castle*, 625 F. App'x 279, 284 (6th Cir. 2015). Nor does he explain how the response even related to him, considering it was about a February 2021 search of his co-defendants with no apparent connection to the January 2022 transaction for which he was convicted. Tajwar instead invites us to speculate on the prejudice he may have experienced, but that falls short of the "high standard" applicable to this kind of challenge. *Id.* at 283 (citation omitted) We therefore reject Tajwar's challenge to the district court's response.

### D.     Tajwar's Sentencing Challenges

Tajwar also appeals various aspects of the district court's sentencing decision. His arguments are unavailing.

#### 1.     Loss Calculation

A sentencing court can increase the base offense level for money laundering based on the amount of "loss" attributable to the defendant. *United States v. Prince*, 214 F.3d 740, 769 (6th Cir. 2000). To make this calculation, the court may consider the defendant's "[r]elevant conduct," which includes all acts that fall "within the scope of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3; *United States v. Iossifov*, 45 F.4th 899, 924 (6th Cir. 2022). "The government must prove the loss amount attributable to a defendant by a preponderance of the evidence." *Iossifov*, 45 F.4th at 925. The sentencing court must then make a factual finding "concerning the

amount of loss" for which the defendant is accountable. *Prince*, 214 F.3d at 769. We review that factual finding for clear error. *Id.*

In this case, the district court treated as "relevant conduct" two previous cash pickups by Tajwar in December 2021. The funds Tajwar received during those pickups, combined with the funds he picked up in January 2022, brought the total amount of loss attributable to him to between $250,000 and $550,000, resulting in a 12-level increase in his base offense level.

Tajwar argues that "relevant conduct" cannot encompass unindicted activity. But we have held that "relevant conduct" can include activity not specified by the indictment, so long as it was part of the same "common scheme or plan" as the underlying offense. *United States v. Skouteris*, 51 F.4th 658, 672 (6th Cir. 2022). At sentencing, the government presented evidence that in December 2021, Tajwar collected large sums of cash in Ohio without delivering any electronics. The district court found that those transactions fell within the "nature and scope" of the conspiracy: the December 2021 and January 2022 transactions all involved the collection of cash without a corresponding sale of electronics. Sent'g Tr., R. 377, PageID 2322–23. The court therefore treated the December 2021 pickups as "relevant conduct" in its loss calculation. In light of the evidence presented, that conclusion was not erroneous.

### 2. Section 2S1.1(b) Enhancement

Tajwar also appeals the district court's application of a six-level enhancement under U.S.S.G. § 2S1.1. That Guidelines provision applies when a defendant "knew or believed that any of the laundered funds were the proceeds of, or were intended to promote . . . an offense involving the manufacture, importation, or distribution of a controlled substance." U.S.S.G. § 2S1.1(b)(1). We review factual determinations underlying the application of this enhancement for clear error. *See United States v. Macias Martinez*, 797 F. App'x 974, 979 (6th Cir. 2020).

The district court did not clearly err with respect to this enhancement. At sentencing, Officer Morris testified that Tajwar admitted that the funds he received "probably [came] from drug proceeds." Sent'g Tr., R. 377, PageID 2285. Tajwar countered that the audio recording disclosed after trial contradicted Officer Morris's account. But Officer Morris responded that he interacted with Tajwar for nearly two hours, and that the seven-minute recording failed to capture later questioning during which Tajwar made his admission. In addition to Officer Morris's testimony, the district court heard other evidence about Tajwar's involvement, including his brother's statement to law enforcement that Tajwar traveled to pick up cash "about once a week." Sent'g Tr., R. 377, PageID 2280, 2302–03. Looking at the context of all the evidence, the district court ultimately found that Tajwar knew or believed that the laundered funds consisted of drug proceeds. We cannot say that the district court clearly erred, so we reject Tajwar's challenge to this enhancement.

### 3. Mitigating Role Reduction

Finally, Tajwar argues that the district court erred in denying him a mitigating role reduction. Under U.S.S.G. § 3B1.2, Tajwar would receive a four-level decrease in his offense level if he was a "minimal" participant in the criminal activity, and a two-level decrease if he was a "minor" participant. Tajwar bore the burden of proving his entitlement to a role reduction by a preponderance of the evidence. *See United States v. Guerrero*, 76 F.4th 519, 533 (6th Cir. 2023).

In determining whether this reduction applies, district courts focus on the defendant's role in the conduct underlying the defendant's base offense level. *United States v. Roberts*, 223 F.3d 377, 380 (6th Cir. 2000). The reduction applies only if the defendant's role in that conduct rendered him "substantially less culpable than the average participant." *Guerrero*, 76 F.4th at 533. And that

depends on factors like the defendant's understanding of the crime, as well as planning and decision-making authority. *See* U.S.S.G. § 3B1.2, cmt. n.3(C).

Tajwar focuses on his role in the broader conspiracy, arguing that he played a small part in the organization's overall activities. But Tajwar's entitlement to a role reduction does not turn on his part in the overall conspiracy; it depends on his role in the conduct that was included in his base offense level. *Roberts*, 223 F.3d at 380. Here, the district court looked only to Tajwar's transactions in December 2021 and January 2022 in calculating his base offense level. And Tajwar does not argue that he played a minor or minimal role in any of those transactions. His argument therefore fails.

## II.    LARA-GARCIA

We now turn to Lara-Garcia's claims. Lara-Garcia appeals his sentence, arguing that the district court improperly enhanced his offense level and ultimately imposed a substantively unreasonable sentence. We consider each argument in turn and conclude that none provides a basis for reversal.

### A.    Drug Premises Enhancement

Lara-Garcia appeals the district court's application of a two-level drug premises enhancement. *See* U.S.S.G. § 2D1.1(b)(12). That enhancement applies if the defendant knowingly maintained a place—such as a house or apartment—for the "purpose of manufacturing or distributing a controlled substance." *Id.*; *see also United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). A defendant "maintains" such a place if he holds a "possessory interest" in (e.g., a lease or ownership interest) or otherwise controls the premises. *United States v. Taylor*, 85 F.4th 386, 389–90 (6th Cir. 2023). The government bears the burden of establishing by a preponderance of

the evidence that the enhancement applies. *United States v. Murillo-Almarez*, 602 F. App'x 307, 312 (6th Cir. 2015).

Lara-Garcia does not dispute that the government recovered significant quantities of drugs—approximately, seven kilograms of fentanyl and one-and-a-half kilograms of cocaine—from a stash house. He argues instead that the government failed to establish that he maintained the stash house because in his view, the evidence did not show that he had a possessory interest in or controlled the premises.[3]

The evidence amply supported the district court's finding that Lara-Garcia controlled the stash house. The government presented evidence that Lara-Garcia paid the apartment's rent in all but one occasion; that he had his own keys to the apartment; and that he frequented the apartment multiple times a week.

We have found similar facts sufficient to demonstrate that a defendant maintained an apartment for purposes of this enhancement. *See id.* The fact that Lara-Garcia did not formally lease the apartment does not alter that conclusion. *Id*. Nor does the fact that one of his co-conspirators, but not him, may have occasionally lived at the apartment. *Id*. We therefore reject Lara-Garcia's challenge to this enhancement.

### B. Leadership Enhancement

Lara-Garcia also appeals the district court's application of a four-level leadership enhancement for his role in the drug trafficking and money laundering operations. *See* U.S.S.G § 3B1.1. This enhancement applies if the defendant served as "an organizer or leader of a criminal

---

[3] Lara-Garcia's other argument, that the use of a place for storage of large quantities of drugs falls outside the scope of this enhancement, lacks merit. *See United States v. Tripplet*, 112 F.4th 428, 431 (6th Cir. 2024).

activity that involved five or more participants." *Id.* § 3B1.1(a). To determine whether a defendant acted as "an organizer or leader," district courts consider factors like the exercise of decision-making authority, the nature of participation in the offense, the degree of participation in planning or organizing the offense, and the degree of control and authority exercised over others. *See Taylor*, 85 F.4th at 390; U.S.S.G. § 3B1.1 cmt. n.4. We review the district court's factual findings on these factors for clear error. *See United States v. Khalil*, 279 F.3d 358, 370 (6th Cir. 2002).

Laura-Garcia contends that the district court improperly found that he directed the activities of others. But the government presented evidence that, in December 2020, he coordinated money deliveries to an undercover DEA agent, and then directed his co-conspirator Nemetz to make those deliveries. Similarly, in February 2022, Lara-Garcia told his brother, an indicted co-conspirator, to buy him a vehicle using drug proceeds. And he directed his brother to sell the same car a few months later. In light of this evidence, the district court did not clearly err in finding that Lara-Garcia directed the activities of "at least one accomplice." *United States v. Minter*, 80 F.4th 753, 758 (6th Cir. 2023) (citation and emphasis omitted). Lara-Garcia's challenge therefore fails.

## C.    Substantive Reasonableness

Finally, Lara-Garcia argues that his sentence is substantively unreasonable, meaning that it is "too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). In assessing substantive reasonableness, we look to whether the district court gave reasonable weight to each of the § 3553(a) factors. *See United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019). We review the district court's sentencing decision for abuse of discretion. *Rayyan*, 885 F.3d at 442. And we apply a rebuttable presumption of reasonableness to a within-Guidelines sentence, like the one Lara-Garcia received. *Boucher*, 937 F.3d at 707.

Apart from reiterating his objections to his sentencing enhancements, Lara-Garcia argues that the district court failed to afford sufficient mitigating weight to his personal circumstances, including his challenging upbringing. But the sentencing transcript shows that the district court did consider Lara-Garcia's personal history and balance it against the seriousness of his offenses. Lara-Garcia effectively asks us to balance the factors differently, but that lies "beyond the scope" of our review. *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). We therefore hold the district court did not abuse its discretion.

## CONCLUSION

For these reasons, we affirm the district court's judgments as to both Tajwar and Lara-Garcia.